# EXHIBIT C

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| VINCERX PHARMA, INC.,<br>Plaintiff,<br>vs.<br>YOURWAY TRANSPORT, INC.,<br>Defendant. | C.A. NO. S23C-09-003 MHC<br><br>JURY TRIAL DEMANDED |

# FIRST AMENDED COMPLAINT

Plaintiff Vincerx Pharma, Inc. ("Vincerx") for its Amended[1] Complaint against Defendant Yourway Transport, Inc. ("Yourway") alleges as follows:

## NATURE OF ACTION

1. This is an action to recover damages for breach of contract and negligence arising from Yourway's failure to properly handle certain research, master, and working cell banks (the "Cell Banks").

2. The Cell Banks needed to remain at a temperature of -196 °C (-320 °F) during the period in which Yourway was responsible for them. If the temperature was to climb above this requirement, the Cell Banks would be destroyed, making them useless for the manufacture of Vincerx's complex drug product. Yourway marketed itself as a company specializing in the transportation and handling of

[1] Attached hereto as **Exhibit A** is a redline of the changes to the original complaint in accordance with Rule 15(aa).

temperature-sensitive materials such as the Cell Banks. Indeed, Vincerx engaged Yourway specifically because Yourway presented itself as a pharmaceutical and clinical supplies courier that specializes in working with materials that must be delivered within strict time and temperature parameters.

3. Yourway knew and understood that the best method for preserving the Cell Banks was to use Cryoport High Volume Dry Shippers (the "Cryoport Shippers"). Cryoport Shippers are designed with insulating space around the sample chamber. That space is also called the "Dewar." Yourway was to fill the Dewar surrounding the sample chamber using a dry vapor liquid nitrogen method to keep its internal temperatures at -196 °C (-320 °F) in accordance with the Cryoport Shippers manufacturer's procedures (the "Method"). The Cryoport Shippers were validated by the manufacturer to maintain temperatures of -150 °C or colder for ten days using the Method. Yourway chose the Cryoport Shippers for this transaction using its professional expertise and knowledge of the materials and conditions.

4. Because of the high value and temperature-sensitivity of the Cell Banks, Vincerx required Yourway to agree to several important contractual obligations, including that Yourway would abide by the "highest prevailing industry standards and practices" and only employ people that had the "proper skill, training, availability and experience."

5. On or about November 30, 2021, Yourway picked up the Cell Banks, which were properly stored in three Cryoport Shippers.

6. Due to the criticality of the temperature of the Cell Banks, each of the Cryoport Shippers possessed an internal temperature tracker that provided Yourway with frequent updates.

7. The Cryoport Shippers containing the Cell Banks arrived in Philadelphia, Pennsylvania on or about December 4, 2021 and were transported to Yourway's facility in Allentown, Pennsylvania while awaiting clearance from customs.

8. Notwithstanding that the Cryoport Shippers were validated to maintain temperature for only ten days from the date that they were packaged, Yourway did not attempt to refill the Cryoport Shippers with liquid nitrogen until on or after December 16, 2021 (*i.e.*, sixteen or more days from the date that the Cryoport Shippers had been packed). Even then, Yourway made critical mistakes and used an improper method to refill the Cryoport Shippers with liquid nitrogen.

9. Rather than refilling the Dewar using the Method, Yourway added liquid nitrogen directly to the sample chamber holding the Cell Banks. This alone could have destroyed the Cell Banks. Moreover, within hours of the failed refill, the internal temperatures of the Cryoport Shippers spiked up to ambient temperature further ensuring the Cell Banks' destruction.

10. Additionally, two of the Cryoport Shippers' internal temperature tracking systems failed. This too required Yourway's immediate attention, yet Yourway failed to monitor these Cryoport Shippers, never addressed the problem, and failed to inform Vincerx of it.

11. By the time the Cell Banks arrived in San Diego, California from Yourway's facility in Allentown, all three Cryoport Shippers, and their contents, had risen to an ambient temperature. Yourway's errors, combined with its failure to properly monitor the materials in its care and control, rendered the Cell Banks useless for their intended purpose.

12. Yourway's quality assurance personnel admitted to Vincerx that Yourway was at fault for the fatal temperature excursions and the failed liquid nitrogen refills, both of which led to the Cell Banks' destruction. But to date, Yourway has refused to compensate Vincerx for the resulting damage.

13. Yourway's destruction of the Cell Banks has caused significant damage to Vincerx. By this case, Vincerx seeks to be made whole for Yourway's admitted wrongdoing.

## PARTIES AND JURISDICTION

14. Vincerx is a Delaware corporation headquartered in Palo Alto, California. Vincerx is a biopharmaceutical company focused on leveraging its

extensive drug development and oncology expertise to advance new therapies for the treatment of cancer.

15. Yourway is a Pennsylvania corporation that markets itself as having the expertise to safely handle and transport drug products, cell banks, and other related pharmaceutical materials "within strict time and temperature parameters."

16. Yourway has consented to the jurisdiction of this Court and venue of this action in this Court. The parties agreed in a Master Services Agreement dated February 12, 2021 that, "[a]ny legal action or proceeding concerning the validity, interpretation and enforcement of this Agreement, matters arising out of or related to this Agreement or its making, performance or breach, or related matters will be brought exclusively in the courts of the State of Delaware. All parties consent to the exclusive jurisdiction of those courts and waive any objection to the propriety or convenience of such venues." *See* Master Services Agreement § 13.9. A true and correct copy of the Master Services Agreement is attached as **Exhibit 1**.

17. The Master Services Agreement also provides that the "laws of Delaware" govern "any disputes arising out of or relating to this Agreement." *Id.* § 13.8.

## BACKGROUND FACTS

### I. Vincerx and its Drug Development Programs.

18. Vincerx is a clinical-stage life sciences company focused on leveraging its extensive drug development and oncology expertise to advance new therapies intended to address unmet medical needs for the treatment of cancer.

19. Starting in December 2018, Vincerx assembled a management team of biopharmaceutical experts with extensive experience in building and operating organizations that develop and deliver innovative medicines to cancer patients.

20. Vincerx's pipeline of products derives from an exclusive, royalty-bearing, worldwide license agreement entered in late 2020 (the "License").

21. Under the License, Vincerx has been granted rights under certain patents and know-how to develop, use, manufacture, commercialize, sublicense, and distribute (i) a clinical-stage and follow-on small molecule drug program, and (ii) a pre-clinical stage modular bioconjugation platform.

22. Vincerx, under the License, controls and has maintained production cell lines, including the Cell Banks.

### II. The Cell Banks.

A. Description of a Cell Bank.

23. A research cell bank is a way to grow and store cells that have certain genetic characteristics for harvesting cells for future use in making drug products.

24. A master cell bank is a small sample of cells having a narrowly defined subset of the genetic characteristics of the research cell bank. Using standardized laboratory procedures under defined conditions, these master cells are dispensed into multiple containers, shown to be free from accidental contamination, and stored under special conditions.

25. Master cell banks are used to create working cell banks. Working cell banks are used in production to create quantities of a desired antibody for use in making a final drug product.

B. Purpose of the Cell Banks.

26. Cell Banks provide reproducible and dependable supplies of the cells needed to manufacture certain drugs.

27. From December 2020 through the present, Vincerx spent millions of dollars to maintain and use the Cell Banks in the development and manufacture of its drug products.

28. Vincerx has assembled a team of professionals in pharmaceutical manufacturing and regulatory requirements, including third-party manufacturers and testing laboratories in the United States, China, Korea, Scotland, and France, to synthesize, qualify, and deliver its drug products. To date, Vincerx has incurred millions of dollars in costs and expenses for such third-party professionals, manufacturers, and testing laboratories.

### III. The Parties Enter the Master Services Agreement and Prepare to Ship the Cell Banks.

29. Beginning in early 2021, Vincerx started the process of moving various materials, including the Cell Banks, to third-party manufacturers, testing laboratories, and storage facilities in Europe and the United States.

30. This process was planned to take months to complete and entailed the handling of many temperature-sensitive and valuable materials.

31. Vincerx evaluated multiple companies that specialize in the safe storage, handling, and transport of pharmaceutical-related materials. Vincerx ultimately engaged Yourway based on its purported expertise and specialization in the realm of temperature-sensitive, pharmaceutical-related materials.

32. On February 12, 2021, the parties entered the Master Services Agreement to govern the services provided by Yourway in shipping Vincerx's pharmaceutical-related materials, including the Cell Banks. *See* Ex. 1.

33. Under the Master Services Agreement, the parties would enter individual orders for services to be provided by Yourway to Vincerx. Each of these orders is referred to as a "Quote."

34. "Services" under the Master Services Agreement is defined broadly to mean "packaging, labeling, quality control testing, stability testing, release, storage, distribution, and/or destruction of Product, together with such other services as are specified in the applicable Quote." Ex. 1 § 2(j).

35. In the Master Services Agreement, Yourway promised to provide such Services "in accordance with the highest prevailing industry standards and practices for the performance of similar services." *Id.* § 3.1.

36. In section 6.5 of the Master Services Agreement, Yourway acknowledged that the "Materials (defined below) are experimental in nature and may have unknown characteristics and therefore [Yourway] agrees to use prudence and reasonable care in the use, handling, storage, transportation, disposition and containment of the Materials." *Id.* § 6.5.

37. Yourway also committed in the Master Services Agreement to only engage employees, consultants, and contractors "with the proper skill, training, availability and experience to provide the Services." *Id.* § 7.4.

38. Yourway further agreed that it would "perform all Services with requisite care, in accordance with terms of this Agreement [and] any Quote appended hereto." *See id.* § 7.5.

39. Yourway further agreed that the Master Services Agreement, "together with the attached Appendix A and any fully-signed Quotes, each of which are incorporated into this Agreement, constitute the entire agreement between the parties with respect to the specific subject matter of this Agreement." *See id.* § 13.5. Additionally, Yourway agreed that "[i]f there is any conflict, discrepancy or inconsistency between the terms of this Agreement and any Quote, Quality

Agreement, purchase order or other document or form used by the parties, the terms of this Agreement will control." *Id.* And the parties also agreed that the Master Services Agreement (including any Quote(s)) "may be changed only by a writing signed by authorized representatives of each party." *Id.* § 13.6.

40. These contractual obligations were crucial commitments made by Yourway—that Vincerx relied upon—because Vincerx's high-value shipments would contain temperature-sensitive materials that required a full range of temperature control solutions. Vincerx's materials, including the Cell Banks, cost millions of dollars to create and develop.

41. Yourway represented in the Agreement and the Quote, and in its advertising, that it had the necessary skill and expertise to handle Vincerx's materials, including the Cell Banks, within strict time and temperature parameters.

42. On September 9, 2021, Vincerx's Associate Director of Global Program Management, Johnny Lai, engaged Hussein Pirbhai of Yourway, concerning a shipment of the Cell Banks.

43. Mr. Lai instructed Yourway that the shipment would involve strict temperature parameters because the Cell Banks needed to always remain at -196 °C (-320 °F).

44. Yourway determined that the Cell Banks would be shipped in three separate Cryoport Shippers.

45. On September 22, 2021, Vincerx notified Yourway to initiate the shipment and Yourway began making arrangements to transport the Cell Banks. The process of preparing to transport the Cell Banks took the parties about two months.

46. On October 29, 2021, the parties agreed on a Quote, which is governed by the Master Services Agreement. *See* Ex. 1 §§ 1, 3. The Quote required that Yourway properly handle and transport Vincerx's materials, including the Cell Banks.

47. The Quote also stated that the Cell Banks must maintain a temperature of -196 °C (-320 °F) throughout Yourway's handling of the Cell Banks.

48. As a self-described expert in handling and shipping temperature-sensitive materials in the pharmaceutical industry, Yourway knew that it was required to observe the temperature conditions of the Cell Banks, maintaining them at -196 °C (-320 °F), and take ordinary measures to ensure that the temperatures of the Cryoport Shippers remained stable and within that range of temperature. Yourway knew that any temperature excursion would destroy the Cell Banks and render them unusable in future drug manufacture.

**IV. The Cell Banks are Destroyed.**

49. On or about December 4, 2021, Yourway delivered the Cryoport Shippers to its facility in Allentown, Pennsylvania.

50. On December 7, 2021, Yourway's Operations Director reported to Vincerx that the "shipment is currently in our US facility and being kept in correct temperature." Yourway also reported that it would continue to monitor the temperatures.

51. Yourway, however, did not monitor temperatures of the Cryoport Shippers or follow the Method required by the Cryoport Shippers' manufacturer to maintain the required temperature for the Cell Banks.

52. The Cryoport Shippers could maintain the required temperature for the Cell Banks for only ten days, or through on or about December 10, 2021.

53. According to Yourway, it did not attempt to refill the Cryoport Shippers with liquid nitrogen until on or about December 16, 2021; nearly a week after the Cryoport Shippers should have been refilled.

54. Moreover, the temperature trackers on two of the three Cryoport Shippers failed at some point, while they were in Yourway's possession, custody, and control, before they arrived in California. Therefore, Yourway could not have monitored their temperatures as required.

55. Given the critical importance of temperature control of the Cell Banks, Yourway was required to refill the Cryoport Shippers in accordance with the Method no later than December 10, 2021 and should have immediately replaced any malfunctioning temperature trackers.

56. Because of Yourway's multiple failures to properly refill the Cryoport Shippers using the Method by December 10, 2021, monitor the temperature of the Cryoport Shippers, and replace defective temperature trackers, all three Cryoport Shippers reached an ambient temperature fatal to the Cell Banks.

57. Not only did Yourway fail to properly handle and maintain the temperature of the Cryoport Shippers, but it further gave no notice of this crisis to Vincerx. It is only when the Cryoport Shippers arrived at PCI's facility that Vincerx learned of the dramatic temperature excursions. And even then, it was PCI that alerted Vincerx to the issues identified above, not Yourway.

58. When Yourway delivered the three Cryoport Shippers to PCI, each of the Cryoport Shippers were recorded by PCI as being at ambient temperature at the time of delivery.

59. PCI immediately notified Vincerx and placed the contents of the Cryoport Shippers in proper storage. But by then, the Cell Banks had been destroyed because of Yourway's failure to properly monitor and maintain the proper temperature and refill the Cryoport Shippers using the Method.

60. Yourway's failure to monitor and maintain temperature levels of the Cell Banks was a total and abject abdication of its duties.

61. At no time during the Cell Banks' transport did Yourway provide any information—other than uninformed and inaccurate assurances—to Vincerx relating to the internal temperatures of the Cryoport Shippers that were in its care.

62. Yourway's gross negligence and recklessness resulted in the destruction of the Cell Banks and substantial loss to Vincerx.

63. Vincerx brought the temperature excursions to Yourway's attention shortly after the three Cryoport Shippers and their permanently damaged Cell Banks arrived at PCI's facility. Vincerx gave written notification of its loss, damages, and claim to Yourway no later than January 7, 2022, and on other occasions.

64. Yourway acknowledged that the Cryoport Shippers were designed to maintain the required temperature of -196 °C (-320 °F) or colder for about ten days. Thus, when the Cryoport Shippers were in Yourway's control, Yourway was required to refill each of the Cryoport Shippers using the Method to maintain the proper temperature. Yourway absolutely failed do so, showing a reckless disregard for the duties that it had undertaken.

65. Yourway's quality assurance personnel acknowledged that the internal temperatures of the Cryoport Shippers rose to ambient temperature during its possession, custody, and control at its facility in Allentown, Pennsylvania.

66. Yourway also admitted that it did not address any issues arising during this time or take any action at all to maintain the integrity of the Cell Banks.

67. Yourway further admitted that it failed to properly use the Method to add liquid nitrogen to the Cryoport Shippers. Specifically, Yourway admitted that its employees did not correctly fill the Dewar, but instead poured liquid nitrogen directly into the internal chamber. That chamber, however, lacked the proper seal and thus could not retain a stable temperature. Further, liquid nitrogen introduced in this way to the Cell Banks would be a fatal event for the Cell Banks.

68. Yourway's failure to use the Method to add liquid nitrogen before the internal temperatures of the Cryoport Shippers began to rise was yet another material breach of Yourway's duties and the requisite standard of care.

69. Without dispute, these unmonitored temperature excursions rendered the Cell Banks unusable in drug manufacturing.

70. The cost associated with creating and validating new Cell Banks to match the specific genetic qualities that existed in the lost Cell Banks is significant.

## COUNT I
## BREACH OF CONTRACT

71. Vincerx incorporates the allegations above.

72. Vincerx and Yourway are parties to the Master Services Agreement.

73. The Master Services Agreement and Quote are a valid, binding, and enforceable contract governed by Delaware law.

74. Under the Master Services Agreement and the Quote, Yourway was required to safely and securely transport the Cell Banks to PCI's facility in San Diego, California.

75. In the Master Services Agreement, Yourway agreed to provide such Services "in accordance with the highest prevailing industry standards and practices for the performance of similar services." Ex. 1 § 3.1.

76. In section 6.5 of the Master Services Agreement, Yourway acknowledged that the "Materials (defined below) are experimental in nature and may have unknown characteristics and therefore [Yourway] agree[d] to use prudence and reasonable care in the use, handling, storage, transportation, disposition and containment of the Materials." *Id.* § 6.5

77. Yourway also agreed in the Master Services Agreement to only engage employees, consultants, and contractors "with the proper skill, training, availability and experience to provide the Services." *Id.* § 7.4.

78. Yourway further agreed that it would "perform all Services with requisite care, in accordance with terms of this Agreement [and] any Quote appended hereto." *See id.* § 7.5.

79. Yourway breached the Master Services Agreement and Quote by failing to (i) provide the highest prevailing industry standards and practices for the performance of similar services; (ii) use prudence and reasonable care when

handling the Cell Banks; (iii) engage employees, consultants, and contractors with the proper skill, training, availability, and experience; (iv) perform the necessary services with the requisite care; and (v) adequately and properly transport the Cell Banks without destroying them.

80. Yourway further breached the Master Services Agreement and Quote by (i) allowing fatal temperature excursions to occur while the Cell Banks were under its control at the Allentown facility; (ii) failing to properly monitor the Cryoport Shippers for temperature excursions; (iii) failing to follow the manufacturer's instructions pertaining to refilling the Cryoport Shippers using the Method; (iv) failing to properly refill the Cryoport Shippers using the Method; and (v) failing to train its employees, agents, and consultants on how and when to properly refill the Cryoport Shippers using the Method.

81. Vincerx performed all of its material obligations under the Master Services Agreement and there are no conditions precedent to this action, or any such conditions precedent have been satisfied or waived.

82. Yourway is liable to Vincerx for damages in an amount Vincerx will prove at trial.

WHEREFORE, Vincerx seeks compensatory, expectation, consequential, incidental, and lost profit damages in an amount to be determined at trial, pre- and

post-judgment interest, legal fees (including attorney' fees), and costs, as well as any further relief that is just and appropriate.

**COUNT II**
**NEGLIGENCE**

83. Vincerx incorporates the allegations above.

84. Vincerx alleges this Count II in the alternative to Count I.

85. Yourway assumed the duty of transporting the Cell Banks with reasonable care under the circumstances, which included respecting the Cell Banks' strict temperature parameters known to Yourway.

86. Specifically, Yourway was required to maintain the internal temperature of the Cryoport Shippers at -196 °C (-320 °F).

87. Having undertaken to transport the Cell Banks under these strict temperature parameters, Yourway assumed a general duty to perform the task in a reasonable and prudent manner.

88. Yourway breached its duty owed to Vincerx by failing to properly transport the Cell Banks within the strict temperature parameters required.

89. Yourway acted negligently and breached its duty by (i) allowing fatal temperature excursions to occur while the Cell Banks were under its control at the Allentown facility; (ii) failing to properly monitor the Cryoport Shippers for temperature excursions; (iii) failing to follow the instructions pertaining to refilling the Cryoport Shippers using the Method; (iv) failing to properly refill the Cryoport

Shippers using the Method; and (v) failing to train its employees, agents, and consultants on how and when to properly refill the Cryoport Shippers using the Method.

90. As a direct and proximate result of Yourway's breaches of its duty owed to Vincerx, Vincerx has suffered significant damages in an amount to be proved at trial.

91. Yourway was grossly negligent, careless, reckless, and acted with wanton and willful disregard for the duty of care it owed to Vincerx.

## COUNT III
## ALTERNATIVE CLAIM FOR STRICT LIABILITY AND DAMAGES UNDER THE CARMACK AMENDMENT

92. Vincerx incorporates the allegations above.

93. If the Court determines that Counts I and/or II above are preempted by the Carmack Amendment to the Interstate Commerce Act (the "Carmack Amendment"), Vincerx pleads in the alternative that Yourway is liable under the Carmack Amendment.

94. The Carmack Amendment imposes strict liability on carriers for any loss or injury to shippers' goods during transport. *See* 49 U.S.C. § 14706.

95. The Cell Banks were in good condition and properly stored in the Cryoport Shippers when they were picked up for shipment to PCI.

96. The Cell Banks needed to be maintained at a temperature of -196 °C during the entire transportation to PCI's facility.

97. The Cell Banks were damaged before they were delivered to their final destination. By the time the Cell Banks reached their destination at PCI, they had reached ambient temperature and had been destroyed.

98. Vincerx suffered damages as a result of the destruction of the Cell Banks in an amount to be determined at trial, but no less than $1.8 million.

99. Vincerx timely filed with Yourway written notice of the loss and damage that Vincerx suffered as a result of Yourway's conduct, and made a claim for Yourway to compensate Vincerx for Vincerx' loss, damage, and injury.

100. Yourway acknowledged Vincerx's claim and declined Vincerx's claim in writing.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, Vincerx seeks compensatory, expectation, consequential, incidental, lost profit, and punitive damages in an amount to be determined at trial, pre- and post-judgment interest, legal fees (including attorney' fees), and costs, as well as any further relief that is just and appropriate.

Date: December 12, 2023

**MELUNEY ALLEMAN & SPENCE, LLC**

*/s/ Sean A. Meluney*

Sean A. Meluney (#5514)
William M. Alleman, Jr. (#5449)
Matthew D. Beebe (#5980)
1143 Savannah Rd., Suite 3-A
Lewes, DE 19958
(302) 551-6740
sean.meluney@maslawde.com
bill.alleman@maslawde.com
matt.beebe@maslawde.com

*Counsel to Plaintiff*